UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

Furquan Knox,                          File No. 1:23-cv-1047
    Plaintiff,

v.                                       Hon.
                                         U. S. District Court Judge

Cody Jordan, Ingham County,
a municipal corporation organized under the laws of
the State of Michigan.
    Defendants.
_____/
J. Nicholas Bostic (P40653)
Attorney for Plaintiff
909 N. Washington Avenue
Lansing, MI 48906
(517) 706-0132
_____/

**COMPLAINT and JURY DEMAND**

      Plaintiff, for his complaint, states:

1. This is a civil action seeking money damages and equitable relief for violations of the United States Constitution and federal statutes under 42 U.S.C. §1983.

2. Plaintiff was at all times relevant to this complaint, a competent adult and a resident of Eaton County in the State of Michigan.

3. Defendant, Cody Jordan is, and at all times relevant to this complaint was, a competent adult, his county of residence is unknown and he conducts his business as an Ingham County Corrections Deputy in Ingham County in the Western District of Michigan.

4. At all times relevant to this complaint, all Defendants were acting under color of state law.

5. This cause of action arose in Ingham County at the Ingham County Jail in the State of Michigan.

6. This Court has jurisdiction pursuant to 28 USC §§1331 and 1343(a)(4).

## GENERAL ALLEGATIONS

7. Paragraphs 1 through 6 are incorporated herein by reference.

8. On or about April 22, 2020, Plaintiff Furquan Knox entered the Ingham County Jail as a pre-trial detainee pursuant to a court order.

9. On or about October 3, 2020, Plaintiff was housed in the jail in a two-person cell with bunk beds.

10. In August or September of 2020, Ingham County placed Demetris Hall in the same cell as Plaintiff.

11. Mr. Hall had been arrested for sexual assault by Meridian Township Police on or about November 24, 2008.

12. Mr. Hall had been arrested for misdemeanor assault by the Lansing Police Department on or about October 21, 2006.

13. On or about July 11, 2012, Mr. Hall pled guilty to failure to comply with sex offender registration requirements in the 54-A District Court.

14. On or about February 27, 2015, Mr. Hall pled guilty to failure to comply with sex offender registration requirements in the 54-A District Court and was sentenced to 108 days in jail.

15. On or about September 22, 2015, Mr. Hall pled guilty to failure to comply with sex offender registration requirements in the 30th Circuit Court and was sentenced to 89 days in the Ingham County jail.

16. On or about June 22, 2017, Mr. Hall was bound over to circuit court from the 54-A District Court on a felony charge of failure to comply with sex offender registration requirements.

17. On or about August 17, 2017, Mr. Hall failed to appear in Circuit Court and a bench warrant was issued for his arrest (30th Circuit Court File 17-522-FH).

18. On or about May 18, 2020, Mr. Hall was arraigned on the bench warrant issued in 2017.

19. On or about May 28, 2020, Mr. Hall was held in contempt for his failure to appear and was sentenced to 30 days in jail with credit for 12 days served.

20. Mr. Hall was being held also as a pretrial detainee on October 3, 2020 when the events related to this complaint occurred.

21. On December 1, 2020, Mr. Hall pled guilty to the felony failure to comply with sex offender registration requirements in 30th Circuit Court file 17-522-FH.

22. In April 2019, Ingham County through its elected Sheriff and through its elected Judge Richard Garcia acting in his capacity as the Chief Circuit and Probate Judge issued the Ingham County Jail Guide.

23. The introductory sentence explains that the Guide is a list of rules and regulations "those inmates in the Ingham County Jail are required to abide by."

24. The introductory paragraph states that an inmate that violates the Ingham County Jail rules and regulations . . . will be subject to Administrative review, behavior sanctions and possible criminal prosecution."

25. The Guide requires inmates to utilize a "request form" also referred to as a kite to file complaints which can only be accessed via the video visitation terminal in each dorm.

26. The Guide states "Inmates are encouraged to report emergency situations or serious incidents of misconduct including but not limited to assault, sexual assault, attempt suicide, medical emergencies directly to Staff."

27. Inmate classification involves five security levels: Minimum, Medium, Maximum, High risk, and Special.

28. Inmate classification also involves two "charge status" levels which are sentenced and unsentenced.

29. The unsentenced category is broken down into awaiting arraignment, awaiting trial, convicted and remanded awaiting sentencing, sentenced to prison, and having a hold from another agency.

30. Plaintiff and Mr. Hall were both unsentenced awaiting trial.

31. The Guide requires inmates to submit a kite to a shift supervisor if they "experience problems in their assigned housing area."

32. The Guide identifies Custody Leve 1-Max as requiring a classification review after 15 days, one hour rotation, no in-house program participation, restricted commissary items (hygiene only), no television, one on-site visitation per week in the evening, and one-on-one counseling as determined appropriate.

33. The Guide identifies Custody Level 2-Max as requiring a classification review after 15 days, one hour rotation, no in-house program participation, standard commissary, no television, one on-site visitation per week in the evening, and one-on-one counseling as determined appropriate.

34. The Guide states that "Inmates that request Protective Custody will have the same standards as Level 1 inmates.

35. On October 3, 2020, Plaintiff was assigned to Room 40 with Mr. Hall in Dorm D, Post 8 inside the Ingham County Jail.

36. On October 3, 2020 at approximately 11:00 p.m., lockdown was imposed by Corrections Deputy Samuel Krease.

37. The first cell check by Deputy Krease did not occur until 11:29 p.m.

38. From 12:13 a.m. on October 4, 2020 until 1:32 a.m., Deputy Krease was joined by Deputy Bragdon from Post 7 during which time they performed cell inspections in both posts.

39. At some time after lockdown but before the food cart made its rounds at approximately 5:00 a.m. on October 4, 2020, Demetris Hall sexually assaulted Plaintiff by forcibly removing Plaintiff's clothing and inserting his penis into Plaintiff's anus.

40. On October 4, 2020 at approximately 11:00 p.m., lockdown was imposed by Corrections Deputy Cameron Ellsworth.

41. From 11:04 p.m. on October 4, 2020 until 11:55 p.m., Deputy Ellsworth was joined by Deputy Swarthout and conducted cell inspections on Post 7 and Post 8.

42. At some time after lockdown but before the food cart made its rounds at approximately 5:00 a.m. on October 5, 2020, Demetris Hall again sexually assaulted Plaintiff by inserting his penis into Plaintiff's anus.

43. On October 5, 2020 at approximately 11:00 p.m., lockdown was imposed by Corrections Deputy Cameron Ellsworth.

44. From 11:10 p.m. on October 5, 2020 until 11:30 p.m., Deputy Ellsworth was joined by Deputy Swarthout and conducted cell inspections on Post 7 and Post 8.

45. At some time after lockdown but before the food cart made its rounds at approximately 5:00 a.m. on October 6, 2020, Demetris Hall again sexually assaulted Plaintiff by inserting his penis into Plaintiff's anus.

46. On October 6, 2020 at approximately 11:00 p.m., lockdown was imposed by Corrections Deputy Cameron Ellsworth.

47. From 11:53 p.m. on October 6, 2020 until 12:23 a.m. on October 7, 2020, Deputy Ellsworth was joined by Deputy Krease and conducted cell inspections on Post 7 and Post 8.

48. At some time after lockdown but before the food cart made its rounds at approximately 5:00 a.m. on October 7, 2020, Demetris Hall again sexually assaulted Plaintiff by inserting his penis into Plaintiff's anus.

49. Plaintiff was involved in a motor vehicle accident at approximately age 5 and suffered a traumatic brain injury.

50. Plaintiff had received social security disability due to lingering learning and other disabilities as a result of the accident.

51. Plaintiff had received special education during grade school.

52. Plaintiff had documented medical conditions from 2016 which included bipolar disorder, attention deficit hyperactivity disorder, and anxiety disorder.

53. While incarcerated and during the times relevant to this complaint, Plaintiff was prescribed and provided Xanax while incarcerated.

54. The Xanax caused Plaintiff to be groggy and impeded his assessment of his circumstances, his processing of information, and his physical reactions.

55. Plaintiff has an orthopedic plate in his left leg.

56. Plaintiff had also been diagnosed with post-traumatic stress disorder.

57. Plaintiff's Xanax dosage was to take one .5mg tablet orally twice per day.

58. On the evening of October 8, 2020, Plaintiff called his mother and told her about the assaults by Mr. Hall.

59. Plaintiff had told Defendant Jordan about the assaults and Defendant Jordan responded that Plaintiff would either have to deal with it or Defendant would put Plaintiff into protective custody.

60. Plaintiff's mother subsequently called the jail and Defendant Jordan then spoke to Plaintiff and removed Plaintiff from the cell and the investigation was initiated.

61. Mr. Hall was subsequently charged with the sexual assault and entered a guilty plea.

## COUNT I – FAILURE TO PROTECT
42 U.S.C.S. § 1983 – Fourteenth Amendment

62. Paragraphs 1 through 61 above are incorporated herein by reference.

63. The Fourteenth Amendment Due Process Clause provides protection to pretrial detainees from assaults from other prisoners.

64. Because of his involuntary incarceration, Plaintiff had no means or methods of protecting himself.

65. Defendants were aware of mental health limitations by virtue of the booking and screening process as well as the provision of the anti-anxiety medication.

66. Defendants were aware of Mr. Hall's prior record, his failure to appear for court, and his repeated failures to comply with his sexual offender registration requirements.

67. Based upon Plaintiff's mental health limitations, the prescribed medication, and Mr. Hall's prior record, Mr. Hall created a substantial risk of serious harm to other inmates.

68. Defendants Jordan and Ingham County failed to take reasonable precautions to prevent Plaintiff from being assaulted by Mr. Hall.

69. The County Defendant's policy in effect as of October 3, 2020, limited Plaintiff's ability to submit a complaint regarding Mr. Hall's conduct.

70. The policy in effect in October 2020 discouraged reporting by inmates of being victimized because Protective Custody includes treatment as a Custody Level 1 Maximum inmate with significant loss of privileges and restrictions on liberty as a pretrial detainee.

71. The facts available to Defendants created an inference that Mr. Hall created a substantial risk of violence to others.

72. Defendants' failure to properly house Plaintiff and allowing access to Plaintiff by Mr. Hall displayed a deliberate indifference to the risk that Mr. Hall posed to Plaintiff.

73. The deliberate indifference on the part of Defendants incorporated into the Guide was the direct and proximate cause of the violation of Plaintiff's Fourteenth Amendment Due Process rights.

74. Plaintiff was damaged by the constitutional violation of Defendants in that he suffered the injuries as stated in Paragraphs 37 through 48 above.

75. Plaintiff was additionally damaged in that he has suffered additional anxiety as a result of the constitutional violation.

76. As of October 3, 2020, it was clearly established that government actors were required to take reasonable precautions to protect pretrial detainees from other inmates that presented an objective risk of engaging in assaultive behavior and that deliberate indifference to that risk would violate the Due Process Clause of the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment for Plaintiff and against Defendants in an amount determined by the jury but not less than 50,000.00 each.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that judgment enter for Plaintiff and

1. against all Defendants as specified above;

2. against Defendant Jordan for exemplary damages in an amount not less than $100,000.00;

3. against all Defendants for attorney fees as allowed by 42 USC §1988;

4. against all Defendants for interest on the award to the date of filing of this complaint;

5. grant such other relief as allowed by law.

| | |
|---|---|
| 10/03/2023<br>Date | */s/ J. Nicholas Bostic*<br>J. Nicholas Bostic P40653<br>Attorney for Plaintiff |

## JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

| | |
|---|---|
| 10/03/2023<br>Date | */s/ J. Nicholas Bostic*<br>J. Nicholas Bostic P40653<br>Attorney for Plaintiff |